UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE ANN JANOWSKI
on behalf of I.J.,

    Plaintiff,                                                Civil Action No. 18-CV-10794

vs.                                                       HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on cross motions for summary judgment [docket entries 20 and 22]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall deny plaintiff's motion and grant defendant's motion.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying the application she filed on behalf of her minor daughter, "I.J.," for Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in January 2017 (Tr. 35-63) and issued a decision denying benefits in April 2017 (Tr. 18-31). This became defendant's final decision in January 2018 when the Appeals Council denied plaintiff's request for review (Tr. 4-6).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305

U.S. 197, 229 (1938). In making this determination, the Court does not resolve conflicts in the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence may support a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of the hearing, I.J. was seven years old and in the first grade (Tr. 40). Plaintiff claims that I.J. has been disabled since July 2014 when her left foot was severely injured when it was run over by a riding lawn mower, cutting off a portion of I.J.'s heel and severing her Achilles tendon (Tr. 150). The ALJ found that I.J.'s "traumatic amputation of left heel with open calcaneous fracture and complete Achilles tendon rupture" was a severe impairment, but that it was not of disabling severity because it did not meet or equal, either medically or functionally, any of the listed impairments for a period of time lasting at least twelve months (Tr. 18, 21, 31).

Having carefully reviewed the administrative record, the parties' briefs, and the applicable law, the Court concludes that the ALJ's decision in this matter is supported by substantial evidence. While I.J. clearly had the impairment plaintiff alleges, the ALJ reasonably concluded that I.J. largely recovered from her heel injury within twelve months. Therefore, while I.J.'s injury and level of impairment were plainly severe, they did not last long enough to be considered disabling under the Social Security Act.

Plaintiff argues that the ALJ failed to consider the difficulties I.J. has had with her orthosis in evaluating her ability to ambulate; that the ALJ did not give appropriate weight to the opinion of one of I.J.'s treating physicians; and that the ALJ did not adequately explain her reasons for finding that I.J. has a "less than marked" limitation in two of the six domains that must be

2

analyzed in determining whether a child's impairment is functionally equivalent to a listed impairment. The Court has considered and rejects these arguments. The ALJ's decision in this matter is clearly supported by substantial evidence.

There is no question that I.J. was severely injured when a riding lawn mower ran over her left foot, severing "over 50% of the calcaneus [heel bone] and all of the heel pad" as well as her Achilles tendon (Tr. 195, 283). She was treated initially at Hurley Medical Center on July 5, 2014 (Tr. 299-302), and then transferred to Mott Children's Hospital at the University of Michigan on July 8 (Tr. 188). Over the next two weeks, I.J.'s wound was treated and her tendon was repaired. She was discharged on July 24 (Tr. 198-99). In August and September, she received two skin grafts for the wounded area (Tr. 263, 266, 319). During this time, I.J. used a wheelchair (Tr. 295, 305), but in October she was able to "begin to weightbear [sic] on her tippy toes" (Tr. 266), and in November and December she engaged in physical therapy for "gait training and LE strengthening" (Tr. 222-52). I.J. was fitted with a brace and orthosis, which were adjusted periodically over time (Tr. 267, 271, 274, 278, 294, 321-26, 328, 330-35, 337-39, 349, 357).

The potentially applicable listings in this matter are 101.02 (major dysfunction of a joint), 101.05 (amputation), and 101.06 (fracture of a tarsal bone). All of these listings require, as relevant to the present case, that the claimant exhibit an "inability to ambulate effectively, as defined in 101.00B2b" for a continuous twelve-month period.[1] Further, when the child uses an orthotic

---

[1] 101.00B2b states:

    b. What we mean by inability to ambulate effectively.

    (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment that interferes very seriously with the child's ability to independently initiate,

3

device, the regulations state:

> Orthotic devices. Examination should be with the orthotic device in place and should include an evaluation of the child's maximum ability to function effectively with the orthosis. It is unnecessary to routinely evaluate the child's ability to function without the orthosis in place. If the child has difficulty with, or is unable to use, the orthotic device, the medical basis for the difficulty should be documented. In such cases, if the impairment involves a lower extremity or extremities, the examination should include information on the child's ability to ambulate effectively without the device in

---

sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 101.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 101.05C is an exception to this general definition because the child has the use of only one upper extremity due to amputation of a hand.)

(2) How we assess inability to ambulate effectively for children too young to be expected to walk independently. . . .

(3) How we assess inability to ambulate effectively for older children. Older children, who would be expected to be able to walk when compared to other children the same age who do not have impairments, must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities. They must have the ability to travel age-appropriately without extraordinary assistance to and from school or a place of employment.

Therefore, examples of ineffective ambulation for older children include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out age-appropriate school activities independently, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about the child's home or a short distance at school without the use of assistive devices does not, in and of itself, constitute effective ambulation.

place unless contraindicated by the medical judgment of a physician who has treated or examined the child.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, 101.00(J)(2).

I.J. plainly does not meet any of these listings because with her orthotic device in place her ability walk was not extremely limited for a continuous twelve-month period. As noted, I.J.'s lawn mower accident happened on July 5, 2014. By December 2014, I.J. was "doing well: running, jumping, cartwheels with friends" (Tr. 321). In February 2015, she "ambulated with the [orthosis]. She liked how it felt compared to her old brace. She walked and ran around the office. She reported no pain" (Tr. 326). In March 2015, I.J. had "returned to participating in all usual activities at home and school without difficulty" and she was advised by Dr. Cowan to "[c]ontinue activity without restriction" (Tr. 327-28). In May 2015, I.J. was "able to walk and run with the device" (Tr. 333). In June 2015, the plastic surgeon, Dr. Vercler, indicated that I.J.'s mother "states that [I.J.] has had no problems walking and all wounds have healed" (Tr. 334). I.J. had "full range of motion in her ankle" and no "sores after changing her orthotic." *Id.* The same month, Dr. Vercler noted that I.J.'s mother "reports that [I.J.] . . . got A's in every class, including physical education" (Tr. 280). While a treatment note from August 2015 stated that I.J. had difficulty walking "long distances without getting tired" (Tr. 338), as I.J.'s mother testified (Tr. 42), on this record the ALJ was entitled to find that I.J.'s ability to walk was no longer "extremely limited" twelve months after her accident.

For the same reasons, the ALJ was entitled to find that I.J.'s condition was not functionally equivalent to any of these listings. Under 20 C.F.R. § 416.926a(b)(1), the extent of a child's functional limitations is determined by assessing her functioning in the following six "domains": (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting

5

and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. To be deemed disabled, the child must have a "marked" limitation in at least two of these domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(a). The regulations define the terms "marked" and "extreme" limitation as follows:

> (2) Marked limitation.
>
> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> \* \* \*
>
> (3) Extreme limitation.
>
> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e).

In the present case, plaintiff appears to concede that the only domains in which I.J. has some limitation are the fourth and sixth. She does not challenge the ALJ's findings that I.J. has

no limitation in the other domains. Rather, she argues the ALJ did not adequately explain why she found that I.J.'s limitations are "less than marked" in the fourth and sixth.

The fourth domain ("moving about and manipulating objects") concerns gross and fine motor skills. 20 C.F.R. § 416.926a(j). As relevant in the present case, this regulation states that a preschool-aged child such as I.J. "should be able to walk and run with ease. Your gross motor skills should let you climb stairs and playground equipment with little supervision, and let you play more independently; e.g., you should be able to swing by yourself and may start learning to ride a tricycle." Section 416.926a(j)(2)(iii). The sixth domain ("health and physical well-being") concerns "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section." Section 416.926a(l). Examples here include symptoms "such as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain," § 416.926a(l)(1), and "limitations in your physical functioning because of your treatment (e.g., . . . multiple surgeries)." Section 416.926a(l)(4)(iii).

As noted above, I.J.'s July 2014 injury and subsequent treatment (including multiple surgeries) certainly did result in a marked or extreme limitation in her ability to move about and on her health and well-being for a period of time. She was unable to walk until November 2014 when she began physical therapy, and she did not fully regain this ability until early to mid-2015. But by March 2015, I.J. had "returned to participating in all usual activities at home and school without difficulty" (Tr. 327). By May 2015, she was "able to walk and run with the device" (Tr. 333), and by June 2015 plaintiff informed Dr. Vercler that she "has had no problems walking and all wounds

7

have healed" (Tr. 334). I.J. had "full range of motion in her ankle" and no "sores after changing her orthotic." *Id.* Additionally, the consulting physician, Dr. Goerss, opined that I.J.'s limitations in the fourth and sixth domains were "less than marked," and she noted only slight limitations in describing I.J.'s functioning, i.e., that I.J. "must wear AFO [brace] or walk on L toes[;] healed skin grafts" (Tr. 383).[2] On this record, the ALJ was fully justified in finding that I.J.'s limitations in the fourth and sixth domains were "less than marked" within twelve months of her injury.

For these reasons, the Court concludes that substantial evidence supports the ALJ's decision in this matter denying plaintiff's claim for SSI benefits. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

s/Bernard A. Friedman
Dated: January 23, 2019　　　　BERNARD A. FRIEDMAN
Detroit, Michigan　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Dr. Goerss also indicated that "[t]he claimant had some complications so her disability lasted slightly more than 1 year" (Tr. 384), but the ALJ was not bound by this opinion. Disability does not depend on "complications" but on functional limitations – in this case, the ability to walk. For the reasons stated above, the ALJ was permitted to find that the limitations on I.J.'s ability to walk were, by July 2015, not of disabling severity.

8

**<u>CERTIFICATE</u> <u>OF</u> <u>SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2019.

<u>s/Johnetta M. Curry-Williams</u>
Case Manager
